**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------

HAROLD JOHN HUMPHREY, JR.,

                              Petitioner,

          v.                                                    No. 9:07-CV-1200
                                                                    (TJM/DRH)

BRIAN FISHER,

                              Respondent.

-----------------------------------------------------------------

**APPEARANCES:**                          **OF COUNSEL:**

HAROLD JOHN HUMPHREY, JR.
Petitioner Pro Se
No. 04-R-3455
Greene Correctional Facility
Post Office Box 975
Coxsackie, New York 12051

HON. ANDREW M. CUOMO                  LEILANI J. RODRIGUEZ, ESQ.
Attorney General for the State        Assistant Attorney General
   of New York
Attorney for Respondent
120 Broadway
New York, New York 10271

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

Petitioner pro se Harold J. Humphrey, Jr. ("Humphrey") is currently an inmate in the

custody of the New York State Department of Correctional Services ("DOCS") at Greene

Correctional Facility in Coxsackie, New York.  Humphrey was found guilty after a jury trial

in Rensselaer County[2] of rape, sexual abuse, and endangering the welfare of a child.

---

[1]This matter was referred to the undersigned for report and recommendation
pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.4.

[2]The trial transcript is divided into four volumes and one sentencing transcript.
Volumes one and two are filed at Docket No. 12.  Volumes three, four and the sentencing

Humphrey is presently serving an aggregated indeterminate term of imprisonment of seven to twenty-one years. Humphrey now seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on the grounds that (1) he received ineffective assistance of counsel; (2) he was denied equal protection under the law; (3) the trial court erred in not admitting the victim's school records; (4) the trial court erred in not admitting the victim's letter to Humphrey; (5) the trial court erred in denying Humphrey's motion to suppress; (6) his right to a fair trial was prejudiced by the improper examination of the prosecution's witnesses; (7) the trial court improperly limited cross-examination; (8) his right to present witnesses on his own behalf was violated; (9) he was deprived of a fair trial since the trial judge showed bias against him; (10) his sentence was excessive; (11) his constitutional right to confront his accusers was violated; and (12) the indictment should have been dismissed. For the reasons which follow, it is recommended that the petition be denied.

## I. Background

On July 8, 2003, a Troy Police Detective investigated a report by a fourteen-year old girl in which she alleged that Humphrey subjected her to rape and sexual abuse over a seven-month period. RA. 142, 148.[3] The victim reported that Humphrey, the ex-brother-in-law of her mother's boyfriend, stayed over night at the house where she lived with her mother, her mother's boyfriend, and her brother, and sexually abused and raped her on

---

transcript are filed at Docket No. 11. Additionally, Docket No. 11 contains two attachments titled "Transcript," but these are identical copies of transcript volumes three, four and the sentencing transcript. Each volume and the sentencing transcript are separately paginated. References herein are to the pages of each volume.

[3] "RA" followed by a number refers to the page(s) of the record on appeal included with respondent's answer. To protect the victim, all trial transcripts were filed under seal.

three occasions. T. 181-205[4]; RA. 148. On June 18, 2003, the victim's stepmother took her to the hospital where the victim was examined by Nurse Nancy Harris, who found that the results of the exam were consistent with the victim's allegations. RA. 169; T. 244, 252-56. At trial, the victim testified about the details of the sexual abuse. T. 178-242.

Based on the child's allegations, Sgt. John Cooney located Humphrey at his place of employment on July 8, 2003. T. 269-70. Sgt. Cooney told Humphrey that he was investigating allegations of rape by a victim who had passed a polygraph test. T. 273-76. In fact, the victim was never given a polygraph test. T. 275-77. Rather, Humphrey was shown a fabricated polygraph test prepared by the New York State Police for use when questioning suspects. T. 274-76. Humphrey voluntarily agreed to make a written statement. T. 277, 280. Humphrey waived his constitutional rights. T. 277-79. Sgt. Cooney wrote the statement himself, allowing Humphrey to make changes. T. 280-81, 283-84. In the four-page signed statement, Humphrey stated that he would get extremely intoxicated at the victim's house and remembered waking up once on the victim's floor. RA 15-16. While Humphrey could not recall having sex with the victim, he stated that if he did, "it must have been because [he] was so drunk [he] didn't know what [he] was doing." Id. Humphrey also stated that he had been "so drunk at times that [he] wasn't responsible for [his] actions," and tended to engage in very stupid activities while he was intoxicated.

---

[4] "T" followed by a number refers to the page(s) of the trial transcript included with respondent's answer. Due to the sensitive nature of the underlying state court convictions, all trial transcripts were filed under seal. Aside from the actual trial transcript, the "trial transcript" packet also consists of: the arraignment held on October 14, 2003, the pre-trial conference held on May 20, 2004, the order to show cause proceeding held on June 15, 2004, the suppression hearing held on June 17, 2004, and the sentencing held on August 6, 2004, all of which are separately paginated. Thus, any reference to "T" refers to the actual trial transcript.

Id. The entire meeting between Sergeant Cooney and Humphrey lasted about an hour and Humphrey was not placed under arrest at any time during the meeting. T. 274, 289.

Humphrey was indicted, found guilty, and sentenced as indicated above. On June 15, 2006, the Third Department unanimously affirmed Humphrey's conviction. People v. Humphrey, 816 N.Y.S.2d 393 (3d Dep't 2006). Application for leave to appeal to the New York Court of Appeals was denied on August 15, 2006. People v. Humphrey, 855 N.E.2d 804 (N.Y. 2006). On September 27, 2007, Humphrey filed a motion to vacate his judgment pursuant to § 440.10 of New York's Criminal Procedure Law. Docket No. 19 -7, Ex. F. The motion was denied on December 26, 2007. Docket No. 19-9, Ex. H. Humphrey sought leave to appeal on January 7, 2008. Docket No. 19-10, Ex. I. Leave was denied on March 12, 2008. Docket No. 19-11, Ex. J. This action followed.

## II. Discussion

### A. Exhaustion

In order for a federal court to grant habeas relief, a petitioner must have exhausted all state judicial remedies. See 28 U.S.C. § 2254(b) & (c). To satisfy this requirement, the petitioner must have exhausted all claims both procedurally and substantively. Horton v. Ercole, 557 F. Supp. 2d 308, 322 (N.D.N.Y. 2007). Procedurally, the federal claim must be presented to the highest state court capable of rendering a decision at least once, on direct or collateral review. Klein v. Harris, 667 F.2d 274, 284 (2d Cir. 1981) (citing Fielding v. Le Fevre, 548 F.2d 1102, 1106 (2d Cir. 1977)). Substantively, the constitutional claim must be "fairly presented" to the state courts by "inform[ing] the state court of both the factual and the legal premises of the claim assert[ed] in federal court." Daye v. Att'y Gen.

4

of N.Y., 696 F.2d 186, 191 (2d Cir. 1982) (en banc), on remand, 712 F.2d 1566 (2d Cir. 1983) (citations omitted). The petitioner must fairly appraise the court of the constitutional nature of the claim in order to exhaust state remedies. Id. at 192. This does not necessarily require "citing chapter and verse of the Constitution." Smith v. Duncan, 411 F.3d 340, 348 (2d Cir. 2005) (quoting Daye, 696 F.2d at 194). Rather, it can be accomplished by

> (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional ligation.

Id. (quoting Daye, 696 F.2d at 194).

On Humphrey's direct appeal, he properly raised the following claims in his Appellate Division brief: (1) ineffective assistance of counsel; (2) denial of equal protection under the law; (3) trial court error in not admitting the victim's school records; (4) trial court error in not admitting the victim's letter to Humphrey; (5) trial court error in denying Humphrey's motion to suppress; (6) improper examination of the state's witnesses; (7) improper limitation on cross-examination; (8) violation of his right to present witnesses on his own behalf; (9) deprivation of a fair trial due to trial judge bias; and (10) an excessive sentence. In his application for leave to appeal to the Court of Appeals, Humphrey attached the state court briefs. The Second Circuit has recognized

> that where a habeas petitioner (1) submits to the New York Court of Appeals his or her Appellate Division briefs and a letter application seeking leave to appeal that did not identify particular issues for that court's review, and (2) leave to appeal was denied by the New York Court of Appeals without stating that the denial was due to petitioner's failure to identify particular issues for review, then a habeas petitioner has properly exhausted his or her federal claims pursuant to § 2254.

5

Galdamez v. Keane, 394 F.3d 68, 70 (2d Cir. 2005).  Therefore, these claims are exhausted.

The remaining two claims raised by Humphrey in his Appellate Brief, that the indictment should have been dismissed and that the trial court erred in denying Humphrey's motion for a trial order of dismissal, are not exhausted since he failed to apprise the court of the constitutional nature of the claims.  However, these claims should be deemed exhausted since there is no further state remedy available.  See Aparicio v. Artuz, 269 F.3d 78, 90 (2d Cir. 2001).  Therefore, these two claims are procedurally barred and can only be reviewed if Humphrey shows cause for the default and actual prejudice; or a fundamental miscarriage of justice, such as actual innocence.  See DiGuglielmo v. Smith, 366 F.3d 130, 135 (2d Cir. 2004); Dunham v. Travis, 313 F.3d 724, 730 (2d Cir. 2002).

To show cause for the default, it must be established that "some objective factor external to the defense impeded counsel's effort to comply with the State's procedural rule."  Murray v. Carrier, 477 U.S. 478, 488 (1986); see also Restrepo v. Kelly, 178 F.3d 634, 638 (2d Cir. 1999).  Actual prejudice can be shown by "a reasonable possibility" that the results at trial would have been different.  Kyles v. Whitley, 514 U.S. 419, 434 (1995).  Since cause for the procedural default has not been demonstrated or even alleged, it need not be determined if Humphrey suffered actual prejudice.  See Stepney v. Lopes, 760 F.2d 40, 45 (2d Cir. 1985).

As for the fundamental miscarriage of justice, a showing of actual innocence is required.  Aparicio, 269 F.3d at 90 (citing Coleman v. Thompson, 501 U.S. 722, 748-50 (1991)).  Humphrey has made no claim that he is actually innocent, nor would the record

6

support such a position. Therefore, Humphrey's claims that the indictment should have been dismissed and that the trial court erred in denying Humphrey's motion for a trial order of dismissal cannot be reviewed by this court.

In addition, in his motion to vacate the conviction pursuant to § 440.10 of the New York Criminal Procedure Law (hereinafter "CPL"), Humphrey raised the following claims: (1) denial of equal protection; (2) deprivation of a fair trial since the prosecutor asked the victim leading questions; (3) violation of his right to confront his accusers; (4) deprivation of his right to a fair trial since the trial judge was impartial against him; and (5) ineffective assistance of counsel. It has been held that if a habeas petitioner makes a § 440.10 motion and it is denied, the exhaustion requirement is met. Klein, 667 F.2d at 282-83. In this case, the motion to vacate was denied, and the Appellate Division denied Humphrey's application for leave to appeal. Thus, Humphrey has exhausted these claims.

### C. Merits

### 1. Standard of Review

The Antiterrorism and Effective Death Penalty Act (AEDPA) restricted on the power of federal courts to grant habeas relief to state prisoners. Williams v. Taylor, 529 U.S. 362, 399 (2000). The AEDPA has been codified in 28 U.S.C. § 2254(d)(1). It states that a federal court may grant habeas relief only if the state court proceedings "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Id.

7

"A state court's decision is 'contrary to' clearly established federal law, as expressed by the Supreme Court, if 'the state court arrives at a conclusion opposite to that reached by [the] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts.'" Davis v. Grant, 532 F.3d 132, 140 (2d Cir. 2008) (quoting Williams v. Taylor, 529 U.S. 362, 412-13 (2000)).  A decision will be based on an unreasonable application of clearly established federal law if a state court "'correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case,' or refuses to extend a legal principle that the Supreme Court has clearly established to a new situation in which it should govern." Hoi Man Yung v. Walker, 468 F.3d 169, 176 (2d Cir. 2006) (quoting Williams v. Taylor, 529 U.S. 362, 407-08 (2000)).

For the deferential AEDPA standard to apply, the state court must have decided the claims on the merits.  See 28 U.S.C. 2254(d).  On the other hand, claims that were not adjudicated on the merits by state courts are to be reviewed de novo.  Aparicio, 269 F.3d at 93 (citing Washington v. Schriver, 255 F.3d 45, 55 (2d Cir. 2001)).  The Second Circuit has found that a state court adjudicates a claim on the merits when it disposes of the claim on substantive rather than procedural grounds and reduces its disposition to judgment. Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001).  For a claim to be deemed adjudicated on the merits, the state court "need not mention the argument raised or cite relevant case law" or even "explain[] its reasoning process." Eze v. Senkowski, 321 F.3d 110, 121 (2d Cir. 2003) (citing  Brown v. Artuz, 283 F.3d 492, 498 (2d Cir. 2002); Sellan, 261 F.3d at 311).  For the deferential AEDPA standard to apply, it is not necessary that the state court refer to the federal claim or to federal case law.  See Davis v. Kelly, 316 F.3d

8

125, 127 (2d Cir. 2003) (citing Sellan, 261 F.3d at 312).

If the last-reasoned state court opinion decided the claim on an independent and adequate state law ground, the claim would be procedurally barred, and the petitioner can only overcome the procedural bar by showing cause and prejudice, or a fundamental miscarriage of justice. However, if the state court decided the claim on the merits of the federal claim, the AEDPA standard of review and merits analysis applies.

Here, the Appellate Division explicitly rejected Humphrey's contentions that the indictment should have been dismissed, and that he was denied equal protection. Humphrey, 816 N.Y.S.2d at 393. As for the remaining claims, the court stated "[w]e have considered defendant's remaining arguments and find them equally unavailing." Id. Thus, the state court adjudicated Humphrey's claims on the merits and so the AEDPA standard of review applies.

It is also important to note that on habeas review by a federal court, the evidence must be viewed in the light most favorable to the prosecution. Washington, 255 F.3d at 58. At the same time, "*pro se* pleadings are held to a less stringent standard than briefs by counsel, and are read generously, 'however artfully pleaded.'" Dorsey v. Kelly, 112 F.3d 50, 52 (2d Cir. 1997) (quoting Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam)). Also significant is that a petitioner is only entitled to habeas relief if the constitutional error at trial was not harmless. Brown v. Keane, 355 F.3d 82, 91 (2d Cir. 2004). When determining whether an error is harmless or not, "the court looks to the record as a whole, considering the overall strength of the prosecution's case, the importance of the improperly admitted evidence, and whether the evidence was emphasized at trial." Id.; see also Raheem v. Kelly, 257 F.3d 122, 142 (2d Cir.2001).

9

## 2. Ineffective Assistance of Counsel

Humphrey claims that he received ineffective assistance of counsel.  He contends that his counsel failed to (1) timely file the notice of alibi witnesses, (2) retain an expert witness, and (3) subpoena certain witnesses.  Respondent argues that the Appellate Division's holding was neither contrary to nor involved an unreasonable application of clearly established federal law, and that nevertheless, the claim is without merit.  Since this claim was adjudicated on the merits in state court, it must be reviewed under the deferential AEDPA standard.

To establish ineffective assistance of counsel, a petitioner must demonstrate that (1) counsel's performance was deficient and (2) counsel's deficient performance prejudiced the petitioner.  Strickland v. Washington,  466 U.S. 668, 687 (1984).  See also Purdy v. United States, 208 F.3d 41, 44 (2d Cir. 2000).  To be deficient, the attorney must have "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Strickland, 466 U.S. at 687.  In other words, counsel's performance had to have fallen below an objective standard of reasonableness.  Id. at 688.  As for the prejudice prong, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 698.  It is well-settled that a court can address the prongs in either order and that both need not be addressed if the petitioner fails to make a sufficient showing on one.  Id. at 697.

Humphrey's contention that his counsel's failure to retain an expert witness resulted in ineffective assistance of counsel is without merit.  It is well-settled that when reviewing a habeas claim based on ineffective assistance of counsel, there is a strong presumption

10

that the attorney's performance was reasonable and that the attorney's actions may

constitute trial strategy. Strickland, 466 U.S. at 689; Bell v. Miller, 500 F.3d 149, 156 (2d

Cir. 2007). In fact, "strategic choices made after thorough investigation of law and facts

relevant to plausible options are virtually unchallengeable." Williams v. Herbert, 435 F.

Supp. 2d 199, 205 (W.D.N.Y. 2006) (citing Strickland, 466 U.S. at 690).

An attorney's decision on whether or not to call a particular witness is part of trial

strategy, and therefore courts will generally not question the attorney's decision. Id. (citing

United States ex rel. Walker v. Henderson, 492 F.2d 1314 (2d Cir. 1974)). With respect to

expert witnesses, "[w]here an expert would only marginally assist the jury in its role as fact

finder, an attorney's decision not to call an expert is more likely to fall within the bounds of

reasonable performance and less likely to prejudice the defendant." Id. at 206 (citations

omitted).

Humphrey claims that an expert witness would have testified that the portion of the

victim's hymen which was displaced could have been due to a reason other than

intercourse. Pet. (Docket No. 1) at 12. However, Humphrey's attorney was effective in

cross-examining the prosecution's expert witness. Therefore, it was reasonable for

defense counsel to choose not to call an expert witness since it would only marginally

assist the jury, given that defense counsel effectively and vigorously cross-examined the

prosecution's witness. Through his questioning on cross-examination, defense counsel

was able to elicit from the prosecution's medical expert witness, Nurse Harris, an explicit

admission that the physical examination was not conclusive as to whether the victim was

subjected to forcible intercourse or whether the sex was consensual. T. 260. Defense

counsel also elicited from the nurse an admission that the physical examination did not

reveal who the victim had sexual intercourse with. T. 261. Therefore, defense counsel could have concluded that calling an expert witness would have been unnecessary and duplicative. Since it has already been established that the attorney's performance was not deficient in this respect, there is no need to assess the prejudice prong. See Strickland, 466 U.S. at 697.

Humphrey also argues that his attorney failed to timely file a notice of alibi. Humphrey has failed to show that his attorney's representation was deficient in this respect. The record indicates that the notice of alibi was untimely because Humphrey's attorney was assigned the case late. OSC. 5.[5] Since the alibi notice was filed late, it was within the judge's discretion to accept testimony from an alibi witness. See Millio v. Barkley, 48 F. Supp. 2d 259, 263 (W.D.N.Y. 1999) (citing N.Y. Crim. Proc. Law § 250.20(3)). The judge found that the alibi notice had limited probative value since it only covered the time period of March 15, 2004 at 6:00 p.m. through March 16, 2004 at 10:00 a.m., while the indictment alleged that one of the rape incidents occurred "on a date in March." RA. 6-9, 194; T. 326-27. Thus, there was no indication that the alibi witness' testimony coincided with the date of one of the alleged rapes. Moreover, Humphrey's attorney stated he understood the limited probative value of the alibi, and filed the notice as a precautionary measure. OSC. 5. This conduct of protectively filing an alibi of notice simply does not fall below an objective standard of reasonableness and thus, was not deficient.

Even if Humphrey is able to establish that the attorney's representation was

---

[5] "OSC" followed by a number refers to the page(s) of the order to show cause proceeding held on June 15, 2004, which is contained in the "trial transcript" packet.

deficient in this respect, he has failed to show that the deficient representation resulted in prejudice. See Strickland, 466 U.S. at 697 ("The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."). As stated above, the alibi notice only covered one day during the month of March while the indictment was not specific as to on what day in March the incident occurred. Thus, even if timely filed, the alibi notice had limited probative value and therefore the outcome of the trial would not have differed had the attorney timely filed the notice.

Lastly, Humphrey contends that he was denied effective assistance of counsel because of his attorney's failure to subpoena witnesses, specifically the victim's sisters, mother, and the mother's boyfriend. This claim is without merit. As previously stated, a court will generally not question an attorney's decision not to call a particular witness since it constitutes a matter of trial strategy. See United States ex rel. Walker v. Henderson, 492 F.2d 1314 (2d Cir. 1974); Gaskin v. United States, 591 F. Supp. 2d 247, 256 (W.D.N.Y. 2008). The Second Circuit has recognized that "the tactical decision of whether to call specific witnesses - even ones that might offer exculpatory evidence - is ordinarily not viewed as a lapse of professional representation." United States v. Schmidt, 105 F.3d 82, 90 (2d Cir. 1997) (citations omitted). Furthermore, when reviewing a habeas claim, courts "must make every effort . . . to eliminate the distorting effects of hindsight." Bell v. Miller, 500 F.3d 149, 156 (2d Cir. 2007) (quoting Strickland, 466 U.S. at 689).

Humphrey has failed to rebut the presumption that his attorney's performance was reasonable and that his actions constituted trial strategy. Humphrey's attorney may

13

reasonably have concluded that calling the witnesses would harm Humphrey's defense. All of the potential witnesses Humphrey sought to testify are family members of the victim. Humphrey's attorney may have found that, rather than benefitting Humphrey's case, those witnesses only had inculpatory evidence to offer, harming Humphrey's defense.

As for the prejudice prong, even though it need not be addressed since there was no showing of deficient performance by defense counsel, Humphrey has failed to demonstrate that but for his trial counsel's errors, the result of the trial would have been different. The jury heard testimony from, among others, the victim of the sex crimes for which Humphrey was convicted, which was corroborated by the nurse's testimony and Humphrey's own statement. Based on all of the evidence the jury was asked to consider, a reasonable probability does not exist that but for defense counsel's alleged error in not calling additional witnesses, the result of the trial would have differed. Thus, Humphrey has failed to demonstrate that trial counsel's alleged errors either fell below an objectively reasonable standard of representation or resulted in prejudice.

### 3. Equal Protection Claim

Humphrey claims that he was denied equal protection since he was deprived of the ability to plea bargain. This claim is without merit. First, there is no constitutional right to plea bargain. See Weatherford v. Bursey, 429 U.S. 545, 561 (1977). Habeas relief is only available to correct errors of constitutional dimensions or violations of federal law. 28 U.S.C. § 2254(a). Since on habeas review, "a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States," this claim provides no basis for habeas relief. Estelle v. McGuire, 502 U.S. 62, 68 (1991) (citing 28

14

U.S.C. § 2241). Second, Humphrey was informed that the trial j's policy was not to accept plea bargains, Humphrey understood the policy, he discussed it with his counsel, and he still chose to pursue a trial. PTC. 2-3.[6] Therefore, Humphrey's claim that he was denied equal protection based on his inability to plea bargain is without merit.

### 4. Evidentiary Rulings

It is well-settled that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle, 502 U.S. at 67-68. Federal habeas courts review state court evidentiary decisions only for consistency with notions of fundamental fairness derived from due process and compulsory process. See Rosario v. Kuhlman, 839 F.2d 918, 924 (2d Cir. 1988); Rosario v. Ercole, 582 F. Supp. 2d 541, 596 (S.D.N.Y. 2008). Thus, "evidentiary rulings, even erroneous ones, rarely rise to the level of a constitutional violation." Ercole, 582 F. Supp. 2d at 558 (citations omitted). For a state court evidentiary ruling to rise to the level of constitutional error, "the error [must be] so pervasive as to have denied [the petitioner] a fundamentally fair trial." Collins v. Scully, 755 F.2d 16, 18 (2d Cir. 1985) (citing United States v. Agurs, 427 U.S. 97,108 (1976)).

When a habeas petitioner makes a claim that defense evidence was wrongfully excluded, the reviewing court must first assess whether the trial court ruling was proper. Hawkins v. Costello, 460 F.3d 238, 244 (2d Cir. 2006) (citations omitted). If proper under a state evidentiary rule, the review is limited to whether the rule is "'arbitrary' or 'disproportionate to the purposes [it is] designed to serve.'" Id. (quoting United States v.

---

[6] "PTC" followed by a number refers to the page(s) of the pre-trial conference held on May 20, 2004, which is contained in the "trial transcript" packet.

Scheffer, 523 U.S. 303, 308 (1998)). However, if the court finds that the ruling was improper, the materiality of the evidence is analyzed to determine whether the excluded evidence "creates a reasonable doubt that did not otherwise exist." Id. (quoting Justice v. Hoke, 90 F.3d 43, 47 (2d Cir. 1996)). In addition, for a writ of habeas corpus to be granted following a state court conviction, a petitioner must demonstrate that the alleged trial error "had substantial and injurious effect or influence in determining the jury's verdict." Henry v. Speckard, 22 F.3d 1209, 1215 (quoting Brecht v. Abrahamson, 507 U.S. 619 (1993)).

### a. Victim's School Records

Humphrey contends that the trial court erred when it denied his request for access to the victim's school records. Also, Humphrey asserts that his rights under the Confrontation Clause were violated since he was unable to properly cross-examine the victim without the records. Respondent argues that state evidentiary rulings are not cognizable on federal habeas review and that nevertheless, the records were not relevant to the victim's credibility.

In the present case, the judge denied Humphrey's motion for access to the victim's school records. SH. 2.[7] The trial judge stated that if the victim was so impaired that she could not testify, she could not be sworn as a witness, and, therefore, the records were not relevant. OSC. 11. As stated above, the habeas court must determine if the trial court ruling was proper under a state evidentiary rule, and if so, whether the rule the court relied on is arbitrary or disproportionate to the purposes it is designed to serve.

---

[7] "SH" refers to the suppression hearing held on June 17, 2004, that is contained in the "trial transcript" packet.

The trial court's ruling was proper as a matter of state evidentiary law. According to

New York case law, school records are not discoverable unless their relevancy and

materiality are established. See People v. Brown, 806 N.Y.S.2d 262, 265 (3d Dep't 2005);

Monica W. v. Milevoi, 685 N.Y.S.2d 231,233 (1st Dep't 1999); Moores v. City of Newburgh

School Dist., 623 N.Y.S.2d 911, 912 (2d Dep't 1995); McGuane by McGuane v. M.C.A.,

Inc., 583 N.Y.S.2d 73, 74 (4th Dep't 1992). Thus, since the relevancy and materiality of

the records were not established, the ruling was proper. This rule is neither arbitrary nor

disproportionate to the purposes it is designed to serve, namely to protect the infant

student, preserve the confidentiality of the records, and prevent fishing expeditions that

search for a way of attacking the victim's credibility. See Growick v. Bd. of Educ., 331

N.Y.S.2d 906, 908 (3d Dep't 1972); Brown, 806 N.Y.S.2d at 265. Therefore, this claim is

without merit.

The Confrontation Clause claim is similarly without merit. It has been held that "[a]ll

erroneous rulings that improperly restrict cross-examination under state or federal rules of

evidence do not necessarily implicate the Confrontation Clause." Harper v. Kelly, 916 F.2d

54, 57 (2d Cir. 1990). Furthermore, "trial judges retain wide latitude, insofar as the

Confrontation Clause is concerned to impose reasonable limits on . . . cross-examination ."

Id. (quoting Van Arsdall, 475 U.S. at 679). "Restrictions on a defendant's presentation of

evidence are constitutional if they serve 'legitimate interests in the criminal trial process'"

and are not "'arbitrary or disproportionate to the purposes they are designed to serve.'"

United States v. Almonte, 956 F.2d 27, 30 (2d Cir. 1992) (quoting Rock v. Arkansas, 483

U.S. 44, 55-56 (1987)). For example, defendants cannot circumvent the rules of evidence.

Id. As stated above, the court properly denied Humphrey's motion for access to the

17

school records based on state rules, which was neither arbitrary or disproportionate to the purpose the rules were designed to serve.

For argument's sake, even if the court did err, Humphrey must establish that the error was harmful. When determining the effect of a Confrontation Clause error, the court can consider various factors, including,

> the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

Harper, 916 F.2d at 57 (citing Van Arsdall, 475 U.S. at 684). Applying these factors to the present case, it is evident that on the whole, even if there was an error, it was harmless. Although the victim was the prosecution's key witness and her testimony was significant in proving the prosecution's case, a great deal of corroborating evidence was introduced. Both the medical exam results provided through the nurse's testimony, as well as Humphrey's own statement, corroborated the victim's testimony on material points. Thus, even if the victim's school records were introduced and resulted in the exclusion of her testimony, there was sufficient corroborating evidence for the jury to consider.

Alternatively, if the victim's school records were introduced for the purpose of attacking her cognitive abilities and ability to recollect, the jury had ample opportunity to assess the victim's abilities through her lengthy testimony on direct and cross-examination. In addition, the fact that the defense counsel was afforded wide latitude in otherwise cross-examining the victim, demonstrates that the denial of the school records did not have a substantial effect on the jury's verdict. Thus, this claim should be rejected.

### b. Victim's Letter

Humphrey also argues that the court erred in refusing to admit a letter the victim wrote to Humphrey. Respondent contends that as a state evidentiary ruling, it is not cognizable on federal habeas review, and that nevertheless, the letter was properly excluded since it constituted hearsay. In the letter, the victim wrote that she loved Humphrey and that she was "sorry for all the trouble that [she] got [Humphrey] into." RA. 212. The court ruled that the letter was not admissible since it was an out-of-court statement that was not inconsistent with any testimony given by the victim at trial. T. 217.

Under New York's rules of evidence, a prior inconsistent statement can be introduced to impeach testimony a witness gave on direct examination. N.Y. Crim. Proc. Law § 60.35. However, the letter did not contradict any of the victim's testimony. In fact, when Humphrey's attorney asked her whether she wrote to Humphrey that she was sorry, she answered yes. T. 225. When Humphrey's attorney asked her if she remembered writing that she loved Humphrey, the victim indicated that she did not recall. T. 227. At that point, defense counsel was permitted to refresh her recollection with the letter. T. 228. New York case law has held that when a witness admits making a prior statement, it is unnecessary to prove the inconsistency by admitting the statement into evidence. See People v. Person, 810 N.Y.S.2d 68, 70 (1st Dep't 2006); People v. Benson, 650 N.Y.S.2d 448, 449-50 (3d Dep't 1996) ("When the inconsistency was admitted by [the witness], it did not have to be belabored. The inquiry is ended by the admission.") (citations omitted).

Since the ruling was proper under a state evidentiary rule and that rule is not arbitrary or disproportionate to the purposes it is intended to serve, Humphrey's right to a fair trial and his rights under the Confrontation Clause were not violated. Even if the

evidentiary ruling was improper, the letter would not have created a reasonable doubt that did not otherwise exist.  See Hawkins v. Costello, 460 F.3d 238, 244 (2d Cir. 2006).  In addition, even if it was error for the court to have excluded the letter, it did not have a substantial effect on the verdict as the jury heard the victim admit to what she wrote in the letter and Humphrey was still convicted.

### 5. Motion to Suppress

In his petition, Humphrey argues that the lower court erred in denying his motion to suppress his statement given to a detective.  In June of 2004, before trial, Humphrey was afforded a suppression hearing in which the judge found that he was not in custody at the time he made statements to the detective and that nevertheless, Miranda warnings were administered before Humphrey gave his written statement.  SH. 27-28.

If the state court "has provided an *opportunity* for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Capellan v. Riley, 975 F.2d 67, 70 (2d Cir. 1992) (quoting Stone v. Powell, 428 U.S. 465, 482 (1976)).  Thus, a Fourth Amendment claim can be considered on habeas review only "(a) if the state has provided no corrective procedures at all to redress the alleged fourth amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." Capellan, 975 F.2d at 70 (citing Gates v. Henderson, 568 F.2d 830, 840 (2d Cir.1977)).  This rule applies regardless of the nature of the evidence the petitioner seeks to suppress,

and includes confessions. See Dawson v. Donnelly, 111 F. Supp. 2d 239, 247 (W.D.N.Y. 2000) (citing Cardwell v. Taylor, 461 U.S. 571, 572-73 (1983)).

Section 710 of New York's Criminal Procedure Law provides for New York's statutory procedure for obtaining suppression of illegally obtained evidence. In this case, Humphrey made an omnibus motion, in part pursuant to that section, asserting that his written statement to the detective was illegally obtained. RA. 121-122. After an evidentiary hearing, the motion to suppress was denied. SH. 28. Humphrey then obtained further review of the suppression issue in the state judicial system by raising it in his direct appeal to the Appellate Division. Docket No. 19-2, Exhibit A. The Appellate Division found the claim to be without merit. People v. Humphrey, 816 N.Y.S.2d 393 (3d Dep't 2006). Since the state provided a corrective mechanism and Humphrey used that mechanism and had a full and fair opportunity to litigate his Fourth Amendment claims prior to trial, his claim concerning the statement that he gave to the detective cannot be reviewed. The Second Circuit has recognized that "the issue whether New York State provides adequate procedures for litigating Fourth Amendment claims 'cannot be open to serious challenge.'" Corchado v. Rabideau, 576 F. Supp. 2d 433, 455 (W.D.N.Y. 2008) (quoting Gates, 568 F.2d at 837). Furthermore, there is no evidence of an unconscionable breakdown in the underlying process.

Although this claim is thus barred on procedural grounds, Humphrey's claim also fails on the merits. Since advice of rights is only required when a person being interrogated by law enforcement officials is in custody, the need to give advice of rights was never triggered in this case. See Isasi v. Herbert, 176 Fed.Appx. 143, 144 (2d Cir. 2006). The Second Circuit has held that in determining whether a person is "in custody"

21

for purposes of [advice of rights], two questions must be analyzed: "first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave." Tankleff v. Senkowski, 135 F.3d 235, 243 (2d Cir. 1998) (quoting Thompson v. Keohane, 516 U.S. 99, 112 (1995)). The first determination is a factual one, while the second inquiry involves both questions of law and fact. Id.

Analyzing the first determination, the record is clear as to the circumstances surrounding the interrogation. On July 8, 2003, Sgt. Cooney went to Humphrey's work place to speak to him about the rape allegations. SH. 3-4. Once he arrived, Sgt. Cooney asked the woman at the reception area if he could speak to the manager, without indicating his reason for being there. SH. 4. Sgt. Cooney then spoke to the manager and asked if he could speak to Humphrey, once again, not indicating his reasons for wanting to speak to Humphrey. SH. 5. The manager then escorted Sgt. Cooney to a private, training type room. Id. He returned with Humphrey, and excused himself. SH. 7. Sgt. Cooney was in plain clothes at the time of the meeting but indicated to Humphrey that he was a detective and was conducting a criminal investigation into allegations where Humphrey's name had been mentioned. Id.

Humphrey willingly spoke to Sgt. Cooney and never asked to leave. SH. 8. At one point during the conversation, the detective told Humphrey that the victim had passed a lie detector test relating to her allegations. SH. 22-23. After a few minutes of casual conversation, Humphrey agreed to reduce the conversation to writing. SH. 9. As Sgt. Cooney began to prepare the written statement, he advised Humphrey of his rights, which Humphrey voluntarily waived. SH. 9-11. Sgt. Cooney wrote the statement himself. SH.

11.  Once Humphrey indicated that he had nothing else he wished to include in the statement, Humphrey reviewed the statement and was allowed to make changes, which he did by initialing the portions he wished to change.  SH. 12.  He also initialed the line immediately after the last word, as well as signed the bottom of each page of the four-page statement.  SH. 12, 13.  Humphrey was free to leave at any time during the conversation and was not placed under arrest at any time during the meeting.  SH. 14.  The entire conversation lasted about one hour.  SH. 19.

Factors a court will consider when determining whether a petitioner was in custody thereby requiring Miranda warnings include "whether a suspect is or is not told that she is free to leave, the location and atmosphere of the interrogation, the language and tone used by the police, whether the suspect is searched, frisked, or patted down, and the length of the interrogation."  Tankleff, 135 F.3d at 244 (citations omitted).  Humphrey was not in custody because he was free to leave, was never placed in handcuffs, and was never placed under arrest at the time of questioning - in fact, he was not arrested until one or two weeks later.  SH. 14, 22.  In addition, Humphrey was questioned in a neutral, unimposing location, a conference-type room at his place of employment.  SH. 4.  Sgt. Cooney  was not hostile and in fact, Humphrey and the detective engaged in casual conversation.  SH. 8.  There is also no evidence that Humphrey was searched, frisked, or patted down at any point during the interrogation.  SH. 1-34.  Lastly, the interrogation lasted only about one hour.  SH. 19.

Even if in custody, Humphrey was nevertheless given the Miranda warnings before he gave his written statement.  SH.9.  Even if Humphrey did make statements before the giving of the warnings, the Second Circuit has held that the admission of a defendant's

23

statements that were made before the advice of rights, even if error, was harmless error

"in light of the overwhelming evidence of guilt and the fact that [the defendant] made a

complete, detailed written confession after the [adivce of rights]." Isasi, 176 Fed.Appx. at

145 (citations omitted). This is precisely the case here. The victim's testimony coupled

with Humphrey's detailed, four-page written statement made after the advice of rights

demonstrates that the admission of any statements made before the advice of rights, even

if in error, was harmless.

Lastly, Humphrey's claim that his statement should have been suppressed because

Sgt. Cooney falsely told him that the victim had passed a polygraph test, is also without

merit. The detective testified that using the "prop" was an appropriate and even

recommended practice among law enforcement officials when conducting a criminal

investigation. T. 275. Courts have held that since a "totality of circumstances" test is used

to assess whether a confession was voluntary, "[a] falsehood by a police officer, although

deplorable, does not necessarily induce an involuntary confession." Walker v. Goord, 427

F. Supp. 2d 272, 277 (W.D.N.Y. 2006) (citations omitted). The use of the "prop" in this

case did not make Humphrey's statement an involuntary one.


### 6. Examination of Prosecution's Witnesses

The next claim is that Humphrey was denied a fair trial because of the improper

examination of the prosecution's witnesses. The Respondent argues that it was proper for

the prosecution to ask leading questions due to the young age of the victim, as well as the

need to expedite the victim's testimony. Merely alleging a violation of the right to a fair trial

does not automatically satisfy the exhaustion requirement. Kirksey v. Jones, 673 F.2d 58,

60 (2d Cir. 1982). In addition, while some courts have considered a prosecutor's conduct during trial to be a constitutional issue, see, e.g., Walker v. Bennett, 262 F. Supp. 2d 25, 33 (W.D.N.Y.2003), others construe the claim as a question of state evidentiary law. See, e.g., Petrucelli v. Coombe, 735 F.2d 684, 688 (2d Cir.1984). Since case law is ambiguous and it cannot be said that the claim is unexhausted, the claim will be considered.

Humphrey's claim can be construed as one for prosecutorial misconduct. In analyzing a prosecutorial misconduct claim, the prosecutor must have engaged in "egregious misconduct . . . amount[ing] to a denial of constitutional due process." Blissett v. Lefevre, 924 F.2d 434, 440 (2d Cir. 1991) (quoting Floyd v. Meachum, 907 F.2d 347, 353 (2d Cir. 1990)). Prosecutorial misconduct violates a defendant's due process right when the misconduct is "of sufficient significance to result in the denial of the defendant's right to a fair trial." Blissett, 924 F.2d at 440 (quoting Greer v. Miller, 483 U.S. 756, 765 (1987)). The court must consider the severity of the alleged misconduct, the curative measures taken, and the likelihood of conviction absent any misconduct, when determining whether the conduct resulted in substantial prejudice. Id. (citations omitted). In determining whether the misconduct deprived the defendant of a fair trial, a court must considered whether the misconduct was "'pervasive' or part of a 'persistent' trial strategy." Id. at 441 (quoting United States v. Weiss, 914 F.2d 1514, 1524 (2d Cir. 1990)).

A review of the prosecution's questioning of the victim demonstrates that there was no conduct that was so severe as to deprive Humphrey of a fair trial. As a fifteen-year-old girl testifying about a sensitive and embarrassing subject, the victim was clearly having difficulty formulating verbal responses. Courts have recognized that while leading questions are generally not permissible on direct examination, there are some

25

circumstances in which leading questions should be allowed "as may be necessary to develop the witness' testimony." United States v. Salameh, 152 F.3d 88 (2d Cir. 1998) (quoting Fed. R. Evid. 611(c)). Such a circumstance is when a young victim testifies. See Paramore v. Filion, 293 F. Supp. 2d 285, 293 (S.D.N.Y. 2003). In such a case, "leading questions may be permitted of a child victim in a sexual abuse case so that the child's testimony can be clarified or expedited if the child is apparently unwilling to testify freely." Id. (quoting People v. Cuttler, 705 N.Y.S.2d 416, 417 (3d Dep't 2000)). Therefore, the leading questioning did not amount to egregious misconduct since it was necessary to elicit testimony from the young victim.

Even if it could be characterized as misconduct, the conduct did not result in substantial prejudice since, even absent the alleged misconduct, it is likely that Humphrey would have been convicted based on the evidence presented at trial. Also, there is no evidence that the misconduct was pervasive or part of a pattern during the trial. Therefore, this claim is without merit.

### 7. Cross-Examination

Humphrey claims that the trial court improperly restricted the cross-examination of the state's witnesses, including the victim and Sgt. Cooney. This claim arises from the Sixth Amendment right to confront witnesses. See U.S. Const. amend. VI, Crawford v. Washington, 541 U.S. 36, 42 (2004). As previously noted, while this right affords a defendant an opportunity to cross-examine witnesses, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice,

confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986). Also, while a defendant is afforded the opportunity to cross-examine witnesses, he is not guaranteed "cross-examination that is effective in whatever way, and to whatever extent the defense might wish." Delaware v. Fensterer, 474 U.S. 15, 20 (1985) (citations omitted). Furthermore, the Confrontation Clause is not necessarily implicated when a ruling restricting cross-examination of a witness is erroneous. See Harper v. Kelly, 916 F.2d 54, 57 (2d Cir. 1990).

Based on a review of the record, it is clear that Humphrey was afforded wide latitude in cross-examining the prosecution's witnesses and that his Sixth Amendment right was not violated. The limits on cross-examination that Humphrey cites were reasonable and based on various concerns. Many limits were likely due to the court's desire to prevent questioning  that would elicit testimony that could confuse the jury . This is a valid limit on the scope of the cross-examination. See Van Arsdall, 475 U.S. at 679. Specifically, Humphrey argues that defense counsel should have been permitted to inquire about the victim's relationship with her mother's boyfriend. However, the judge reasonably sustained the prosecution's objection in order to avoid irrelevant testimony. Also, Humphrey argues that the court improperly limited his cross-examination of Sgt. Cooney regarding the surrounding circumstances of Humphrey's statement and his investigation of the case. The limits the court placed on the cross-examination were likely due to concerns about confusion of the issues and relevance.

Even if a Confrontation Clause error was made, the court must consider whether it was harmful. In conducting this analysis, the court must consider " whether, assuming that

the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt." Van Arsdall, 475 U.S. at 684.  The main factors to be considered in determining the effect of the error are

> the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of the cross-examination otherwise permitted, and of course, the overall strength of the prosecution's case.

Id. (citations omitted); see also Brinson v. Walker, 407 F. Supp. 2d 456, 481 (W.D.N.Y. 2006).  In the present case, while the victim and Detective Cooney were clearly key witnesses in the prosecution's case, even if there was an error, it was clearly harmless in light of the wide latitude of cross-examination otherwise afforded to the defense, the corroborating evidence through the nurses' testimony and Humphrey's statement, and the overall strength of the prosecution's case.  Therefore, this claim should be denied.

### 8. Right to Present Witnesses

Humphrey contends that his right to present witnesses was violated when the court precluded alibi testimony.  Respondent argues that under New York's discovery rules, the notice of alibi was untimely and was therefore properly precluded.

It is well-settled that "[t]rial courts are allowed to impose rules on the identification and presentation of evidence, including notice of alibi requirements, in order to further '[t]he State's interest in the orderly conduct of a criminal trial.'" Zimmerman v. Burge, 492 F. Supp. 2d 170, 192 (E.D.N.Y. 2007) (quoting Taylor v. Illinois, 484 U.S. 400, 411 (1988)). In addition, "[a] defendant's constitutional right to present evidence is not absolute and

may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." Pulinario v. Goord, 291 F. Supp. 2d 154, 174 (E.D.N.Y. 2003) (citing Taylor, 484 U.S. at 411). Aside from the defendant's right to present evidence, the court must also weigh "[t]he integrity of the adversary process, which depends both on the presentation of reliable evidence and the rejection of unreliable evidence, the interest in the fair and efficient administration of justice, and the potential prejudice to the truth-determining function of the trial process . . . ." Taylor, 484 U.S. at 414-15. The Supreme Court has held that in determining  whether preclusion of alibi testimony is an appropriate sanction for non-compliance with notice requirements, a court should consider various factors, including  the extent of prosecutorial surprise or prejudice, the effectiveness of a less severe sanction, whether the defendant's non-compliance was willful, the criminal justice system's interest in rejecting unreliable evidence, and the impact of the preclusion of the alibi testimony on the verdict. See Taylor, 484 U.S. at 414-15 & n.19.

It has been held that "[i]t is acceptable to preclude testimony that violates a state's discovery rules." Millio v. Barkley, 48 F. Supp. 2d 259, 264 (W.D.N.Y. 1999) (citation omitted). However, the Supreme Court has held that in deciding whether a court should exclude alibi testimony when notice has not been timely filed, the court should determine if the non-compliance with the notice requirement was willful. See Taylor, 484 U.S. at 415. If the non-compliance was willful, then a sanction precluding such alibi testimony is justified. Id. However, if the non-compliance was not willful and lesser sanctions are available, preclusion is not appropriate. See Noble v. Kelly, 246 F.3d 93, 100-101 (2d Cir. 2001).

In considering the factors in Taylor, it was proper for the trial court to preclude the alibi testimony. The notice of alibi was served on June 4, 2004, which was approximately eight months late and only a few weeks before the trial was to start. RA. 199. Therefore, the prejudice to the prosecution was great since there was not sufficient time to investigate the alibi. As for the effectiveness of a less severe sanction, the trial was set to begin two weeks after the notice of alibi was served, and therefore an adjournment would not have been effective, and the prosecution would still have suffered prejudice. RA. 199. The non-compliance does not appear willful as defense counsel stated that he was assigned the case late and promptly filed the notice of alibi. OSC. 5. In addition, the criminal justice system's interest in rejecting unreliable evidence is great in this case when the notice was served only weeks before trial. Lastly, the impact of the preclusion of the alibi testimony on the verdict is minimal if not non-existent. The notice of alibi merely covered one day in March, while the indictment alleged that one of the rape incidents occurred "on a date in March." RA. 194. There is no evidence to suggest the date the alibi witness planned to testify to was the same date as the rape. Therefore, the notice of alibi was not probative and cannot be said to have had an affect on the verdict.

Even if the noncompliance was not willful and that lesser sanctions were available such that the alibi testimony should not have been precluded, it was certainly a harmless error. In light of the other significant evidence against Humphrey, the exclusion of the alibi witnesses' testimony did not have a substantial and injurious effect or influence in determining the jury's verdict. See Brecht v. Abrahamson, 507 U.S. 619, 623 (1993).

## 9. Judicial Bias

Humphrey also claims that he was deprived of a fair trial because the judge was

biased. Humphrey argues that the trial judge improperly permitted the prosecution to ask

the victim leading questions on direct examination, questioned the victim himself, was

abrasive with Humphrey during his testimony, and allowed the prosecution to engage in

improper questioning during the cross-examination of Humphrey, and that the trial judge

should have recused himself from the case.

It has been held that

> [a] trial judge's intervention in the conduct of a criminal trial would
> have to reach a significant extent and be adverse to the defendant
> to a substantial degree before the risk of either impaired functioning
> of the jury or lack of the appearance of a neutral judge conducting
> a fair trial exceeded constitutional limits.

Daye, 712 F.2d at 1572. The test for determining whether a judge's conduct deprived a

defendant of a fair trial "is whether the jury was so impressed with the judge's partiality to

the prosecution that it became a factor in determining the defendant's guilt, or whether it

appeared clear to the jury that the court believed the accused is guilty." United States v.

Amiel, 95 F.3d 135, 146 (2d Cir. 1996) (citing United States v. Pisani, 773 F.2d 397, 402

(2d Cir. 1985); United States v. Nazzaro, 472 F.2d 302, 303 (2d Cir. 1973)) (internal

quotation marks omitted). In addition, this determination is made by a review of "the

record as a whole." United States v. Tocco, 135 F.3d 116, 129 (2d Cir. 1998)).

Furthermore,"only infrequently does intervention by a trial judge rise to the level of a due

process violation." Gayle v. Scully, 779 F.2d 802, 806 (2d Cir. 1985) (citations omitted).

After a review of the trial transcript, it is clear that this claim is without merit. The

judge's comments and questioning of the witnesses were done simply for clarification

31

purposes. "[A] judge does not deny a defendant due process of law by merely intervening in a trial to question witnesses." Gayle, 779 F.2d at 806. The judge's other rulings were based on New York rules of evidence. Based on the record as a whole, the judge was clearly impartial and any potential partiality never became a factor in determining the defendant's guilt or affected the jury's verdict in any way.

As to recusal, recusal is only required when the judge's "impartiality might reasonably be questioned." United States v. Giordano, 442 F.3d 30, 48 (2d Cir. 2006) (citing 28 U.S.C. § 455(a); United States v. Diaz, 176 F.3d 52, 112 (2d Cir. 1999)). Since there is no evidence that the judge acted partially, recusal was not necessary. Thus, the trial judge's actions in this case did not exceed constitutional limits and did not violate Humphrey's right to a fair trial.

### 10. Right to Confront Accusers

Humphrey claims that he was denied the right to confront his accusers, specifically the victim's sisters, grandmother, mother, and mother's boyfriend, as well as two of the victim's friends who were present for one of the incidents, and the victim's stepmother, who signed the incident report. Respondent argues that the prosecution does not have a duty to call every witness to a crime during the trial. Respondent also asserts that, aside from the victim's two friends, none of the witnesses Humphrey cites were witnesses to the crime, and that Humphrey could have called the witnesses as part of his case.

One of the rights guaranteed by the Sixth Amendment is the right to confront one's accusers. See U.S. Const. Amend. VI. The Second Circuit has held that when a person was never called as a witness, the confrontation clause is not implicated. United States v.

32

Coven, 662 F.2d 162, 170 (2d Cir. 1981); see also United States ex rel. Meadows v. State of New York, 426 F.2d 1176, 1184 (2d Cir. 1970) (noting that "the sixth amendment applies to evidence actually disclosed at a trial" and "a defendant has no right to confront a witness who provides no evidence at trial.") (internal citations and quotation marks omitted). Humphrey contends that he had a right to confront the victim's mother and her boyfriend since they were interviewed by Sgt. Cooney. Petition, 6 (Docket No. 1). However, this does not implicate the Sixth Amendment right to confront one's accusers since neither was called as a witness at trial. In addition, Humphrey's claim that he was entitled to question Mary Ainsworth because she signed the incident report, rather than the victim herself, is also without merit. See RA. 148. Once again, the Sixth Amendment right to confront one's accusers was not implicated in this situation since Ms. Ainsworth was never called as a witness at trial and there is no indication that the report was ever introduced into evidence. Also, it is irrelevant that the victim did not sign the incident report since the victim was actually the accuser and therefore, the confrontation clause was not violated since the defendant did in fact cross-examine her.

Even if it is shown that this right was violated, it was clearly a harmless error. The harmless error test requires an evaluation of whether the error "had substantial and injurious effect or influence in determining the jury's verdict" and a showing of actual prejudice. Brecht v. Abrahamson, 507 U.S. 619, 623 (1993). None of the alleged errors rose to this level and there is certainly no showing of actual prejudice. Thus, this claim is without merit.

## 11. Excessive Sentence

Humphrey argues that his sentence was excessive.  It is well established that "[n]o federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law."  White v. Keane, 969 F.2d 1381,1383 (2d Cir. 1992) (citations omitted).  In this case, since Humphrey's sentence was within the range prescribed by state law, his claim is without merit.

In New York, the sentencing range for rape in the second degree, a class D felony, is one to seven years.  N.Y. Penal Law § 70.00; see also N.Y. Penal Law § 130.30.  Since Humphrey was sentenced to an indeterminate period of incarceration of two and one-third to seven years for this count, his sentence was within the prescribed range.  See S.[8]  Thus his claim is without merit.  Furthermore, the one-year sentences Humphrey received for sexual abuse in the second degree and endangering the welfare of a child, class A misdemeanors, were also within the prescribed statutory range.  See N.Y. Penal Law § 70.15(1) (sentence of imprisonment for a class A misdemeanor shall not exceed one year); N.Y. Penal Law §§ 130.60, 260.10.  Additionally, New York law provides that, "'even if the material elements overlap, consecutive sentences are permissible where the People demonstrate that the offenses are based on separate and distinct acts.'"  Palacios v. Burge, 470 F. Supp. 2d 215, 224 (E.D.N.Y. 2007) (internal quotations and citations omitted).  This is clearly the case as the indictment alleged that, while the charges were the same, the chargeable acts were committed on three separate occasions.  RA. 3-9.  Accordingly, this claim should be denied.

---

[8] "S" followed by a number refers to the page(s) of the sentencing held on August 6, 2004, which is contained in the "trial transcript" packet.

34

## 12. Defects in the Indictment

Humphrey argues various claims regarding defects with the indictment. Specifically, he argues that (1) the prosecution failed to present all exculpatory evidence to the grand jury, (2) the prosecution failed to properly instruct the grand jury on the law, (3) the prosecution infringed Humphrey's right to fully testify before the grand jury, (4) the indictment is the result of a defective grand jury proceeding, (5) the indictment should have been dismissed for legal insufficiency before the grand jury, (6) the indictment should have been dismissed based on duplicity, and (7) the indictment should have been dismissed based on lack of specificity as to the dates of the alleged offenses.  Respondent contends that the claim should be deemed exhausted but procedurally defaulted, and that notwithstanding, the claims are not cognizable on federal habeas corpus review. As noted above, the indictment claims are deemed exhausted and procedurally barred since Humphrey failed to raise the claims in a way that appraised the courts of the federal and constitutional question, but there is no further state remedy available.  See Alston v. Donnelly, 461 F. Supp. 2d 112, 122 (W.D.N.Y. 2006) (citations omitted).  Since no cause and prejudice or a fundamental miscarriage of justice was demonstrated, the claim cannot be reviewed.  See id. (citations omitted).

Nonetheless, with respect to Humphrey's claims regarding the grand jury proceeding, deficiencies in grand jury proceedings are not cognizable in federal habeas corpus proceedings.  See Lopez v. Riley, 865 F.2d 30, 32 (2d Cir. 1989); Green v. Artuz, 990 F. Supp. 267, 273 n. 8 (S.D.N.Y. 1998).  Claims concerning state grand jury proceedings are rendered harmless beyond a reasonable doubt once a defendant has been convicted by a jury.  United States v. Mechanik, 475 U.S. 66, 70 (1986); Lopez, 865

F.2d at 32 (2d Cir. 1989).  Furthermore, the Fifth Amendment right to a grand jury

indictment is not incorporated by the Due Process Clause of the Fourteenth Amendment

and thus does not apply to the states.  See Branzburg v. Hayes, 408 U.S. 665, 688 n.25

(1972);  Fields v. Soloff, 920 F.2d 1114, 1118 (2d Cir. 1990) (citation omitted).  Thus, none

of Humphrey's claim involving the grand jury proceedings are cognizable on habeas

review and in any event, are deemed harmless beyond a reasonable doubt as he was

convicted by a jury.

       As for Humphrey's claims that the grand jury indictment should have been

dismissed for legal insufficiency based on lack of specificity as to the dates of the alleged

offenses, it is well-settled that challenges to the sufficiency of an indictment are generally

not cognizable on habeas review.  See Cortez v. Scully, 717 F. Supp. 224, 227 (S.D.N.Y.

1989) (citing United States ex rel. Mintzer v. Dros, 403 F.2d 42, 43 (2d Cir. 1967)).

However, a claim that there is a defect in a state indictment can be cognizable on habeas

review if "the indictment falls below basic constitutional standards."  Carroll v. Hoke, 695 F.

Supp. 1435, 1438 (E.D.N.Y. 1988).  An indictment is deemed constitutionally sufficient if "it

charges a crime [1] with sufficient precision to inform the defendant of the charges he

must meet and [2] with enough detail that he may plead double jeopardy in a future

prosecution based on the same set of events."  De Vonish v. Keane, 19 F.3d 107, 108 (2d

Cir. 1994) (quotations and citations omitted).  Thus, "an indictment need do little more than

to track the language of the statute charged and state the time and place (in approximate

terms) of the alleged crime."  Stavroulakis, 952 F.2d at 693 (quoting United States v.

Tramunti, 513 F.2d 1087, 1113 (2d Cir. 1975)).  Furthermore, when time is not an

essential element of a crime, stating time in approximate language is sufficient.  United

States v. Nersesian, 824 F.2d 1294, 1323 (2d Cir. 1987) (citing United States v. Weiss, 752 F.2d 777, 787 (2d Cir. 1985)).  When determining whether a time span is reasonable in a case involving a young victim, consideration must be given to "the fact that young complainants often do not remember the exact date of when an alleged offense occurred." Campbell v. Poole, 555 F. Supp. 2d 345, 379 (W.D.N.Y. 2008) (citations omitted). The indictment here states that the acts relating to the rape and sexual abuse counts were performed "on a date in September 2002," "on a date in November 2002," and "on a date in March 2003."  RA. 3-8.  As for the endangering the welfare of a child count, the indictment alleges "on or between September of 2002 to March 2003."  RA. 8.  The time period of the charges is therefore approximate enough to meet the requirements of an indictment.

As for Humphrey's claim that the indictment should have been dismissed based on duplicity, it is also without merit.  Under Rule 8 of the Federal Rules of Criminal Procedure, an "indictment . . . may charge a defendant in separate counts with 2 or more offenses if the offenses charged . . . are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8.  Thus, duplicity exists when an indictment  "joins two or more distinct crimes in a single count."  United States v. Walsh, 194 F.3d 37, 46 (2d Cir. 1999) (quoting United States v. Aracri, 968 F.2d 1512, 1518 (2d Cir.1992)).  Here, each count of the indictment alleges only one offense and is therefore not duplicitous.  See RA. 3-9.

### 13. Trial Order of Dismissal

Humphrey claims that the trial court erred in not granting a trial order of dismissal.

37

Respondent argues that the claim is unexhausted but that in any event, there was sufficient evidence to prove the charges. As noted above, since this is a state law claim and Humphrey failed to appraise the court of the constitutional nature of the claim, the claim is not exhausted. However, it will be deemed exhausted and thus procedurally barred since there is no further available state remedy. See Alston v. Donnelly, 461 F. Supp. 2d 112, 122 (W.D.N.Y. 2006). As no cause for default and actual prejudice or a fundamental miscarriage of justice has been shown, the claim cannot be reviewed. Id. Nevertheless, on its merits this claim goes to the sufficiency of the evidence. It is well-settled that "the question of the sufficiency of the evidence is a question of state law and does not rise to constitutional dimensions." United States ex rel. Griffin v. Martin, 409 F.2d 1300, 1302 (2d Cir. 1969 ) (citations omitted). Furthermore, "[a]ssessments of the weight of the evidence or the credibility of witnesses are for the jury and not grounds for reversal on [habeas] appeal." Garrett v. Perlman, 438 F. Supp. 2d 467, 470 (S.D.N.Y. 2006) (quoting Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir. 1996)). Thus, Humphrey's claim as to the weight of the evidence is not reviewable in habeas proceedings.

Furthermore, "[i]t is only when the record is devoid of any evidence to support the findings or the conviction that it is subject to constitutional attack for alleged violation of a defendant's right to due process of law." United States ex rel. Thomas v. Deegan, 282 F. Supp. 344, 347 (S.D.N.Y. 1968) (citations omitted). Based on the victim's testimony alone, it is evident that the record was replete with evidence to support the charges. Humphrey's claim is therefore without merit.

38

### III. Conclusion

For the reasons stated above, it is hereby

**RECOMMENDED** that the petition for a writ of habeas corpus be **DENIED**.

Furthermore, the Court finds that Johnson has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2) (a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."); see Slack v. McDaniel, 592 U.S. 473, 474 (2000). Therefore, the Court recommends that no certificate of appealability should issue with respect to any of petitioner's claims.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: July 23, 2010
      Albany, New York

                                      David R. Homer

                               United States Magistrate Judge